# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ALAN WALLIS, Individually and on Behalf of All Other Persons Similarly Situated, | § § § § | |
| | § | Civil Action No. 3:13-cv-3104 |
| Plaintiff, | § § | |
| v. | § § | |
| | § | |
| FROZEN FOOD EXPRESS INDUSTRIES, INC, JERRY T. ARMSTRONG, W. MIKE BAGGETT, BRIAN R. BLACKMARR, BARRETT D. CLARK, KEVIN K. KILPATRICK, T. MICHAEL O'CONNOR, STONEY M. STUBBS, JR., S. RUSSELL STUBBS, JOHN T. HICKERSON, DUFF BROTHERS CAPITAL CORPORATION, and DUFF BROTHERS SUBSIDIARY, INC., | § § § § § § § § § § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § | |

## CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND INDIVIDUAL CLAIMS FOR VIOLATION OF FEDERAL SECURITIES LAWS

Plaintiff Alan Wallis ("Plaintiff"), by his attorneys, alleges on information and belief, except for his own acts, which are alleged on knowledge, as follows:

### SUMMARY OF THE ACTION

1.      Plaintiff brings this action individually, and on behalf of public shareholders of Frozen Food Express Industries, Inc. ("Frozen Food" or the "Company") against Frozen Food's Board of Directors (the "Board" or the "Individual Defendants") for breaches of fiduciary duty arising out of the Board's attempt to sell the Company to Duff Brothers Capital Corporation and Duff Brothers Subsidiary, Inc. ("Merger Sub") (collectively, "Duff

1

Brothers") for inadequate consideration, pursuant to an unfair sales process, and materially misleading information, as aided and abetted by Frozen Food and Duff Brothers.

2.    Plaintiff also brings this action individually for violations of Sections 14(d)(4) , 14(e)and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against all defendants.

3.    On July 15, 2013, Frozen Food and Duff Brothers announced a definitive agreement under which Duff Brothers would commence a tender offer to acquire all the Company's outstanding shares for $2.10 per share in cash, in a transaction valued at approximately $38.2 million (the "Proposed Transaction").

4.    The Proposed Transaction was approved by an interested Board, whose members negotiated lucrative, post-merger employment positions with the new company. The Board will also receive windfall financial benefits from cashing in restricted stock awards for approximately $5.7 million.

5.    For example, S. Russell Stubbs, the Company's current President and Chief Executive Officer ("CEO"), negotiated the Proposed Transaction and was able to obtain post-merger employment with the new entity. Tellingly, the Board acceded to Duff Brothers' demands upon Stubbs' recommendations despite the fact that James and Thomas Duff own and control Southern Tire Mart, LLC ("Southern Tire Mart"), Frozen Food's largest and most important tire supplier and services provider, and KLLM Transport Services, LLC ("KLLM"), one of Frozen Food's key competitors.

6.    In December 2012, Stubbs informed James and Thomas Duff in confidence that the Company was for sale, to which the brothers responded by immediately purchasing Frozen Food common stock on the open market.  By the beginning of March 2013, the Duffs

had acquired more than one million Frozen Food shares (or approximately 6% of the Company's outstanding shares) while in possession of material, nonpublic information (*i.e.*, that Frozen Food was up for sale). In breach of their fiduciary duties, the members of the Board therefore allowed the Duffs to substantially increase their leverage over the Company.

7.     Shortly thereafter, the Board entered into the Proposed Transaction with Duff Brothers for inadequate consideration of $2.10 per share, despite having a higher offer of $2.22 - $2.72 per share from Sponsor C. The Board further inexplicably refused to provide additional due diligence to Sponsor C.

8.     As described *infra*, Frozen Food's improving financial performance and the Company's position for growth evinces that the Proposed Transaction consideration undervalues the Company. Indeed, an analyst for GEO Investing estimated a price for the Company's shares in 2013 of $5.85 per share. The $2.10 per share is likewise well below the Company's 52-week high share price of $2.50 per share (and well below the offer price Sponsor C was willing to pay) and does not account for the significant synergies that will be achieved in the merger.

9.     The Individual Defendants have further exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that prevent other bidders from making successful competing offers for the Company. Specifically, pursuant to the Agreement and Plan of Merger dated July 12, 2013 (the "Merger Agreement"), Defendants agreed to: (i) a limited 10-day "go-shop" provision followed by a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers (or even in continuing discussions and negotiations with potential acquirers); (ii) a provision that provides Duff Brothers with three business days to match any competing

proposal in the unlikely event one emerges; and (iii) a $1.15 million termination fee if the Proposed Transaction is not consummated. These provisions conjunctively limit the Board's ability to act with respect to pursuing superior proposals and alternatives to the Proposed Transaction.

10.    On July 23, 2013, Frozen Food filed a Schedule 14D-9 Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission (the "SEC") which misrepresents and fails to disclose material information necessary for the Company's shareholders to make an informed decision as to whether to tender their shares in the Proposed Transaction.

11.    As described below, the consideration to Frozen Food common shareholders contemplated in the Proposed Transaction is insufficient and the process by which Defendants propose to consummate the Proposed Transaction is unfair to Plaintiff and other common shareholders of the Company. The Individual Defendants' conduct therefore constitutes a breach of their fiduciary duties owed to Frozen Food's common shareholders.

12.    For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from commencing the tender offer or, in the event the tender offer is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, good faith, due care, and full and fair disclosure.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C §1331 in that Plaintiff's claims arise in part under the Constitution and laws of the United States, including Section 14(d), 14(e), and 20(a) of the Exchange Act. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

14.     Venue is proper in this Court because Frozen Food is incorporated in Texas and has its primary place of business in this District.

## PARTIES

14.     Plaintiff is, and has been at all relevant times, the owner of shares of Frozen Food common stock.

15.     Frozen Food is incorporated under the laws of the State of Texas.  The Company maintains its principal executive offices at 1145 Empire Central Place, Dallas, Texas 75247-4305.  The Company is one of the leading temperature-controlled truckload and less-than-truckload carriers in the United States.  Frozen Food offers services for over-the-road and intermodal modes for temperature-controlled truckload and less-than-truckload, as well as dry truckload on a non-dedicated fleet basis.  The Company's stock trades on the NASDAQ stock market under the ticker symbol "FFEX."  Frozen Food may be served with process by and through its registered agent, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

16.     Defendant S. Russell Stubbs ("Stubbs") is the Company's President and CEO since March 1, 2011.  Stubbs has been a director of the Company since 2005 and upon information and belief, defendant Stubbs is a citizen of Texas.  Stubbs may be served with process at Frozen Food's principal executive offices at 1145 Empire Central Place, Dallas, Texas 75247-4305.

17.     Defendant Stoney M. Stubbs, Jr. ("Stubbs Jr.") has been a director of the Company since 1980, has been the non-executive Chairman of the Board since March 1, 2011, and previously served as Chairman of the Board and CEO.  Upon information and belief, defendant Stubbs Jr. is a citizen of Texas.  Stubbs Jr. may be served with process at

5

Frozen Food's principal executive offices at 1145 Empire Central Place, Dallas, Texas 75247-4305.

18.     Defendant T. Michael O'Connor ("O'Connor") has been a director of the Company since 1992 and is a member of the Board's Audit Committee.  Upon information and belief, defendant O'Connor is a citizen of Texas.  O'Connor may be served with process at 507 N. Victoria Street, Victoria, TX 77901-6352.

19.     Defendant Jerry T. Armstrong ("Armstrong") has been a director of the Company since 2003 and serves as the Chair of the Audit Committee.  Upon information and belief, defendant Armstrong is a citizen of Washington.  Armstrong may be served with process at 14114 Dallas Parkway, Suite 460, Dallas, Texas 75254-1365.

20.     Defendant Barrett D. Clark ("Clark") has been a director of the Company since 2007.   Clark is a member of both the Audit Committee and the Nominating and Corporate Governance Committee.   Upon information and belief, defendant Clark is a citizen of Texas.  Clark may be served with process at 10116 Estate Lane, Dallas, Texas 75238-2135.

21.     Defendant Kevin M. Kilpatrick ("Kilpatrick") has been a director of the Company since 2009 and is a member of the Compensation Committee.  Upon information and belief, defendant Kilpatrick is a citizen of Texas.  Kilpatrick may be served with process at 3116 Tanglewood Trail, Fort Worth, TX 76109-2012.

22.     Defendant Brian R. Blackmarr ("Blackmarr") has been a director of the Company since 1990.  Blackmarr is the Chairman of the Compensation Committee and is a member of the Nominating and Corporate Governance Committee.  Upon information and belief, defendant Blackmarr is a citizen of Texas.  Blackmarr may be served with process at 4433 Belclaire Avenue, Dallas, Texas 75205-3036.

23.     Defendant W. Mike Baggett ("Baggett") has been a director of the Company since 1998.   Baggett is the Chairman of the Nominating and Corporate Governance Committee and is a member of the Audit Committee and compensation Committee.   Upon information and belief, defendant Baggett is a citizen of Texas.   Baggett may be served with process at 10116 Estate Lane, Dallas, Texas 75238-2135.

24.     Defendant John T. Hickerson ("Hickerson") has been a director of the Company since 2009.   Hickerson has been the Company's Executive Vice President and Chief Operating Officer since January 15, 2010.   Upon information and belief, defendant Hickerson is a citizen of Texas.   Hickerson may be served with process at 2221 Knob Hill Drive, Corinth, Texas 76210-1921.

25.     Defendants Stubbs, Stubbs Jr., O'Connor, Armstrong, Clark, Kilpatrick, Blackmarr, Baggett, and Hickerson are collectively referred to herein as the Individual Defendants and/or the Board.

26.     Defendant Duff Brothers is a Texas corporation.   Duff Brothers is wholly owned by Thomas Duff and James Duff.   Duff Brothers may be served with process by and through its registered agent, Cameron Dee Sewell, at 2100 Ross Avenue, Suite 2600, Dallas, Texas 75201.

27.     Defendant Merger Sub is a Texas corporation wholly owned by Duff Brothers and it was created solely for the purposes of effectuating the Proposed Transaction. Merger Sub may be served with process by and through its registered agent, Cameron Dee Sewell, at 2100 Ross Avenue, Suite 2600, Dallas, Texas 75201.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

28.     By reason of the Individual Defendants' positions with the Company as officers and/or directors of Frozen Food, they are in a fiduciary relationship with Plaintiff and the other public shareholders of Frozen Food and owe them, as well as the Company, a duty of good faith, due care, candor, and loyalty.

29.     Where the officers and/or directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; (ii) a breakup of the corporation's assets; or (iii) sale of the corporation, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.  To diligently comply with their fiduciary duties, the directors and/or officers may not take any action that:

a.      adversely affects the value provided to the corporation's shareholders;

b.      favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

c.      contractually prohibits them from complying with their fiduciary duties;

d.      will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

e.      will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

30.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Frozen Foods, are obligated to refrain from:

8

a.      participating in any transaction where the directors or officers' loyalties are divided;

b.      participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

c.      unjustly enriching themselves at the expense or to the detriment of the public shareholders.

31.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of loyalty, good faith, candor, and care owed to Plaintiff and other shareholders of Frozen Food, or are aiding and abetting others in violating those duties.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action on his own behalf and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all owners of Frozen Food common stock and their successors in interest (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

33.     This action is properly maintainable as a class action for the following reasons:

a.      The Class is so numerous that joinder of all members is impracticable.  As of July 22, 2013, Frozen Food had 18,175,818 shares of common stock outstanding.  The holders of these shares are believed to be geographically dispersed throughout the United States;

b. There are questions of law and fact that are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

    i. Whether the Individual Defendants have breached their fiduciary duties of good faith, due care, candor, and loyalty with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

    ii. Whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

    iii. Whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets;

    iv. Whether Plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated;

    v. Whether Frozen Food, Duff Brothers, and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and

    vi. Whether the Individual Defendants have disclosed and will disclose all material facts in connection with the Proposed Transaction;

c. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

d. Plaintiff is an adequate representative for the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the

interests of the other members not parties to the adjudications or substantially impair or impede the ability to protect their interests; and

f.   Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### A.   Company Background

34.   Frozen Food describes itself as one of the leading temperature-controlled truckload and less-than-truckload carriers in the United States with core operations in the transport of temperature-controlled products and perishable goods including food, health care and confectionery products.  The Company also provides bulk tank water transportation, brokerage/logistics, and dedicated services to its customers.  Frozen Food generates revenue based upon the number of miles traveled, the weight of the load, and the number of trucks being utilized by its customers.

35.   Despite industry challenges, the Company gained pricing yields throughout 2012 and positioned itself to improve in 2013.

36.   On March 19, 2013, the Company issued a press release announcing Frozen Food's financial results for the quarter and year ended December 31, 2012.  The Company's performance was improving despite difficult industry conditions, including reporting total operating revenue, net of fuel surcharges, increase of $78.4 million, a 5.6% increase over the same period in 2011.

37.   Defendant Stubbs touted Frozen Food's growth in 2012 and forecasted profitability in 2013 by stating the following:

*While we still have progress to make, we have successfully repositioned our Company, and I am confident that we have the right plan in place to restore the Company to profitability during 2013 and restore more meaningful profitability in the years to come*.  (Emphasis added.)

38.      The Company also took steps to improve yields by enhancing its sales efforts through securing new national accounts and exiting lanes it considered to be less profitable. Highlighting Frozen Food's improved revenue during 2012, Stubbs stated:

As a result of our actions and more favorable market conditions, the productivity of our fleet, as measured by revenue per truck per week, improved by nearly ten percentage points during 2012. Of particular importance, the growth in our LTL business accelerated in the second half of the year, as customers increasingly recognized our differential value proposition of being the only asset based national temp controlled LTL network in existence in the US marketplace.

39.      On April 29, 2013, the Company issued a press release announcing Frozen Food's financial results for the first quarter ended March 31, 2013 ("1Q 2013"). The Company's profitability continued, as it reported the following financial and operating highlights:

➢ Total operating revenue of $97.8 million, an 11.3% increase over the same period in 2012.

➢ Revenue per truck per week increased 2.0% to $3,339, compared to $3,275 in the same period in 2012.

40.      Commenting on 1Q 2013 results, Stubbs boasted that the driver of the Company's growth was the following:

The execution of our strategic plan continues to deliver solid growth in revenue and improvement in operating profitability. During the first quarter, TL and LTL revenue grew 9.0% and 17.8% respectively, keeping pace with a 12.0% growth in the number of trucks in service. Volumes and pricing trends were favorable and were only slightly offset by an increase in the empty mile ratio. Brokerage, logistics and equipment rental revenue was relatively unchanged from the prior year at approximately $7 million, as the effect of exiting an unprofitable dedicated service relationship last year was offset by a $0.6 increase in equipment rental revenue and slight growth in water

12

transport services.

41.     The Company's efforts to improve its price yields has resulted in continued improvement in both LTL revenue per hundredweight and TL revenue per mile in 1Q 2013. Although the industry faces a driver shortage, the Company continued to produce drivers through its Frozen Food Driver Academy.  The Company also provided new, higher-yield service offerings and improved its service standards across all operations, which resulted in double-digit increases in LTL tonnage and solid growth in TL billed miles.

42.     As discussed *infra*, despite the Company's bright future, the Board disloyally acceded to the demands of the Thomas and James Duff, whom used their stock ownership and control over the Company's key suppliers to pressure the Board into a transaction for an inadequate price.

### B.     The Duffs Control Frozen Food's Largest Supplier

43.     Southern Tire Mart, indirectly owned by Thomas and James Duff, is the largest independently- owned commercial tire dealer and retread manufacturer in the United States.  Thomas Duff currently serves as Southern Tire Mart's CEO and James Duff serves as its Vice President.

44.     Southern Tire Mart is likewise Frozen Food's largest supplier of commercial tires and services.  According to the Company's Form 10-K, filed with the SEC on March 19, 2013, Frozen Food's "Tires on equipment in use" asset is valued at approximately $8.1 million, or nearly 14% of the Company's current assets.  Frozen Food's business is therefore largely dependent on its ability to contract with and obtain products and services from Southern Tire Mart.

45.     Thomas Duff and James Duff also indirectly own and control KLLM, which

provides temperature-controlled trucking services in direct competition with Frozen Food.

### C. The Conflicted Board Conducted a Flawed Process Leading Up to the Proposed Transaction

46.     Beginning in late 2011, the Board began considering strategic alternatives for the Company.   On January 17, 2012, the Board retained Stephens, Inc. ("Stephens") as its financial advisor with respect to seeking a potential sale of the Company.

47.     The Board adopted a "case-by-case basis" approach to contact only equity buyers, and not strategic parties, when considering a possible transaction.   Initially, this approach inexplicably eliminated potential acquirors that may have been willing to pay a premium for the Company based upon synergies unavailable to equity buyers.   Moreover, upon information and belief, the Board favored private equity firms because those firms are more likely to retain management to run the company post-merger because private equity firms do not typically have the expertise needed to run the businesses they acquire.

48.     Between April 2012 and August 2012, Stephens contacted 55 potential equity buyers, 28 of which entered into confidentiality agreements with "standstill provisions in customary form."   Two parties submitted nonbinding offers to acquire the Company— Sponsor A, which offered Frozen Food $0.16 per share, and Sponsor B, which offered Frozen Food a purchase price of $1.50 to $2.00 per share.

49.     In September 2012, "Strategic B" contacted Stubbs to express interest in a possible transaction.   Strategic B entered into a confidentiality agreement with a standstill provision and was then provided with due diligence materials.

50.     On October 22, 2012, Strategic B submitted a non-binding indication of interest to acquire Frozen Food.   On October 26, 2012, Strategic B submitted a revised, fixed price offer for $2.16 per share but subsequently withdrew its offer without explanation.

51.     Beginning on December 19, 2012, Thomas and James Duff began purchasing Frozen Food common stock on the open market "with the view of obtaining a significant position" (*i.e.*, with likely a view to acquiring Frozen Foods).

52.     On December 21, 2012, Thomas Duff met with Stubbs to "discuss the Company's commercial tire purchases from Southern Tire Mart" and "trends in the trucking industry and the challenges faced by the Company."

53.     Between December 19, 2012 and January 2, 2012, the Duffs acquired 196,300 more shares of Frozen Food common stock.

54.     In early January 2013, Stubbs "confidentially" notified James and Thomas Duff that the Company was up for sale.  James and Thomas Duff then continued to purchase Frozen Food common stock on the open market, acquiring 190,009 shares between January 3 and 15, 2013.

55.     Between January 31, 2013 and February 14, 2013, James and Thomas Duff again met with Stubbs to discuss the Company's commercial tire business and the "possible involvement of the Duffs with the Company."   KLLM's CEO and CFO also joined these meetings.  During the February 14, 2013 meeting, James and Thomas Duff stated that they tentatively valued Frozen Food at $2.20 per share, subject to further due diligence.

56.     On February 28, 2013, James and Thomas Duff formed Duff Brothers.

57.     Over the following weeks, Frozen Food and Duff Brothers negotiated a confidentiality agreement to provide Duff Brothers with access to nonpublic information concerning the Company.   At the same time, James and Thomas Duff continued to acquire Frozen Food common stock on the open market.  Indeed, during the negotiations, James and Thomas Duff acquired on the open market 363,073 Frozen Food shares in January 2013;

15

483,452 Frozen Food shares in February 2013; and 7,299 shares Frozen Food shares in March 2013.

58.     On March 4, 2013, Thomas Duff, on behalf of himself and James Duff,[1] reported a 5.84% stake in Frozen Food in a Schedule 13D filed with the SEC.  On March 13, 2013, Duff Brothers and Frozen Food entered into a confidentiality agreement pursuant to which the Company agreed to provide Duff Brothers with further confidential information concerning the Company's business.

59.     Notwithstanding the fact that the James and Thomas Duff owned and controlled the Company's main tire supplier and a key competitor, the Board notified James and Thomas Duff that the Company was up for sale and put the Company in a weak bargaining position by ignoring the brother's open market share purchases.

60.     On April 24, 2013, a hedge fund manager from Sponsor C contacted Stephens regarding a potential acquisition of the Company.  Sponsor C informed Stephens that it had $75–$100 million available for a potential acquisition and sought to acquire the Company for $2.22 to $2.72 per share.

61.     On May 8, 2013, James and Thomas Duff submitted a non-binding indication of interest to acquire Frozen Food for $2.00 per share and subsequently increased its offer to $2.15 per share on May 22, 2013.  James and Thomas Duff also requested exclusivity and that Frozen Food procure voting agreements from two significant shareholders.  Unsurprisingly, neither of these shareholders would agree to enter into a voting agreement with James and Thomas Duff in connection with a potential transaction.

62.     On May 28, 2013, Sponsor C informed Stephens that it would withdraw its

---

[1]     Pursuant to an Amended and Restated Trust Agreement for which James Duff is the trustee.

offer unless lane pricing information relating to Frozen Food's customers was provided. The Board refused to provide Sponsor C with the requested information, thereby providing James and Thomas Duff a tactical advantage (since James and Thomas Duff already received substantial due diligence and had access to inside information as controllers of the Company's top supplier). The Board's decision not to provide Sponsor C with critical due diligence information left Sponsor C paralyzed and unable to submit a concrete final offer.

63.    On June 24, 2013, Thomas Duff called Stubbs to inform him that if the transaction was to proceed, Frozen Food would have to agree to reduce transaction costs by $1 million or accept a lower offer price of $2.10 per share. The Board complied with his demands and agreed to the lower price of $2.10 per share to the detriment of the Company and its shareholders. The agreement was reached despite knowledge that Sponsor C was likely willing to pay a higher price.

64.    As expected, shortly thereafter, and prior to finalizing and signing the Merger Agreement, James and Thomas Duff began discussing post-deal employment for defendants Stubbs, Armstrong, and Hickerson.

65.    On July 12, 2013, the Board approved the Proposed Transaction for $2.10 per share, despite a higher offer from Sponsor C of $2.22 to $2.72 per share, which the Board intentionally thwarted by refusing to provide Sponsor C with the requested diligence.

## D.    The Proposed Transaction at an Inadequate Price

66.    On July 15, 2013, Frozen Food announced that it had entered into the Merger Agreement with Duff Brothers pursuant to which Duff Brothers will commence a tender offer to acquire all of the Company's outstanding common shares for $2.10 per share in a cash transaction valued at approximately $38.2 million.

17

67.     Given the Company's strengthening performance and its positioning for growth, the Proposed Transaction consideration is inadequate and significantly undervalues the Company.   Indeed, a risk analyst for GEO Investing estimated a $5.85 price for the Company's shares in 2013 based upon the Company's growth initiatives and cost-cutting. The GEO Investing analyst also noted that Frozen Food's entry into the oil exploration industry provided a "tremendous opportunity for a new source of growth" for the Company.

68.     The $2.10 proposed merger consideration is also well below the Company's 52-week high share price of $2.50 and the price Sponsor C was willing to pay.

69.     The Proposed Transaction consideration also fails to adequately compensate Frozen Food's shareholders for the significant synergies created by the merger.   The Proposed Transaction is a strategic merger, as Thomas Duff acknowledged that the acquisition of Frozen Food will lead to synergies and enhance KLLM's service.   Specifically, Thomas Duff stated the following:

> "We are excited about the opportunity to add another leader in the temperature controlled trucking industry to our family group of businesses. With the synergies and increased capacity that we can gain from the ownership of both Frozen Food and KLLM, we know that we will be able to enhance the quality service that both companies have been providing to their customers.  With our resources, we will be able to bring to Frozen Food the financial strength that is needed to preserve and expand its operations for its valued employees for years to come.  Overall, we see great things ahead for both of the companies."

70.     In a July 16, 2013 letter to employees, Jim Richards, the CEO of KLLM, touted the benefits of the acquisition of Frozen Food, noting that KLLM and Frozen Food will become the "2nd largest control carrier in North America" and that "[t]ogether, [the two companies] will become a much stronger force in the Temperature Control Marketplace."

71.     Despite the significant synergies inherent in the Proposed Transaction, the

Board failed to secure a fair price for the Company.  Furthermore, Duff Brothers is seeking to acquire the Company at a time when the Company's stock is underpriced and is poised for tremendous growth.

### E.     The Unreasonable Deal Protection Devices

72.     The Proposed Transaction is also unfair because, as part of the Merger Agreement, Defendants agreed to certain deal protection devices that operate conjunctively to ensure that no competing offers will emerge for the Company.

73.     Specifically, the Merger Agreement permits the Company a limited "go-shop" period of only ten business days to solicit alternate takeover proposals.  After the ten days, a strict "no-solicitation" provision becomes effective, prohibiting the Board from taking any meaningful action to ensure that it is in compliance with its fiduciary duties.  Section 6.3(e) goes further and requires the Company to immediately cease and cause to be terminated any existing discussions with potential alternative acquirers concerning a takeover proposal.

74.     In addition, pursuant to § 6.3(b), the "no solicitation" provision bars the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Duff Brothers.  Specifically, Section 6.3(b) states:

> From and after the Solicitation Period End-Date, and except as to any Excluded Party or as expressly permitted by Section 1.2(c) or Section 6.3(c), the Company shall not, and the Company shall cause any of its Subsidiaries not to, and the Company shall instruct its Representatives acting on its behalf not to, (i) solicit, initiate or knowingly facilitate or knowingly encourage any inquiries or indications of interest regarding, or the making of any proposal or offer that constitutes, or that would reasonably be expected to lead to, a Takeover Proposal; (ii) enter into or participate in any discussions (other than to state that the Company is not permitted to have discussions) with any Person that has made (A) a Takeover Proposal, with respect to such Takeover Proposal, or (B) an inquiry or indication of interest that could reasonably be expected to lead to  a Takeover Proposal,

with respect to such Takeover Proposal; (iii) approve, endorse or recommend any Takeover Proposal; or (iv) enter into any letter of intent, term sheet, merger agreement, acquisition agreement, option agreement or similar document or any Contract contemplating or otherwise relating to any Takeover Transaction

75.     The Merger Agreement also contains a "matching rights" provision, pursuant to which the Company must promptly notify Duff Brothers should it receive an unsolicited competing acquisition proposal.   Pursuant to § 6.3(d) of the Merger Agreement, the Company must notify Duff Brothers of the bidder's identity and the terms of the bidder's offer. Thereafter, if the Board determines that the competing acquisition proposal constitutes a "Superior Proposal," § 6.3(c) requires the Board grant Duff Brothers three business days to amend the terms of the Merger Agreement so that the alternative acquisition proposal would no longer constitute a "Superior Proposal."

76.     The effect of these provisions (after the illusory go-shop period) is to prevent the Board from entering discussions or negotiations with other potential purchasers unless the Board can first determine that the competing acquisition proposal is, in fact, "superior," and even then, the Company must give Duff Brothers three business days to match the competing acquisition proposal. This severely limits the opportunity for a potential purchaser to emerge and severely limits the ability of the Board to properly exercise its fiduciary duties.

77.     The Merger Agreement also provides that a termination fee of $1.15 million must be paid to Duff Brothers by Frozen Food if the Company decides to pursue a superior proposal.  The Company also may be required to pay certain out-of-pocket costs and expenses of up to $250,000 to Duff Brothers' affiliates.   The unreasonable termination fee will ensure that no competing offer will appear, as any competing bidder would

essentially pay a naked premium for the right to provide the shareholders with a superior proposal.

78.     The Company has also granted Duff Brothers a "Top-Up" option that ensures that Duff Brothers gains the shares necessary to effect a short-form merger.  If Duff Brothers receives 90% of the shares outstanding through its tender offer, it can effect a short-form merger.   In the event Duff Brothers fails to acquire the 90% required, the Merger Agreement also contains a "Top-Up" provision that grants Duff Brothers an option to purchase additional shares from the Company in order to reach the 90% threshold required to effectuate a short-form merger.

79.     Moreover, in connection with the Proposed Transaction, Stubbs, Stubbs Jr., and Hickerson have entered into tender and voting agreements to tender the shares of common stock they beneficially own.   As a result, approximately 12.8% of the outstanding shares of Frozen Food are already locked up in favor of the Proposed Transaction.

80.     Finally, the Company disclosed that it had entered into the Poison Pill Amendment granting a limited exemption only to Duff Brothers to exceed the poison pill's ownership limitations.   As stated in a Form 8-A12B/A filed with the SEC on July 15, 2013:

### Item 1. Description of Registrant's Securities to be Registered

On July 12, 2013, the Board of Frozen Food Express Industries, Inc., (the "Company") entered into the Fourth Amendment (the "Amendment") to the Rights Agreement (as defined below) with Registrar and Transfer Company, as Rights Agent.  Capitalized terms used and not otherwise defined in this Item 1 have the meaning ascribed to them in the Rights Agreement, dated as of June 14, 2000, between the Company and Registrar and Transfer Company, a successor to Fleet National Bank, as Rights Agent (as amended, the "Rights Agreement").

The Amendment provides, among other things, that none of (i) the announcement of the Merger Events (as defined in the Amendment), (ii) the execution, delivery and performance of the Merger Agreement (as defined in the Amendment) and the acquisition of, or right or obligation to acquire,

beneficial ownership of Company common stock as a result of the execution of the Merger Agreement (iii) the conversion of Company common stock into the right to receive the merger consideration under the Merger Agreement or (iv) the consummation of the Merger Events or any other transaction contemplated by the Merger Agreement will cause (x) Duff Brothers Capital Corporation, Duff Brothers Subsidiary, Inc. or any of their Affiliates or Associates to become an Acquiring Person, or (y) the occurrence of a Flip-In Event, a Flip-Over Event, a Separation Date or a Stock Acquisition Date under the Rights Agreement. In addition, the Amendment provides that the Rights will expire immediately prior to the effective time of the Merger (as defined in the Merger Agreement), but only if the Merger is completed.

81.     This action effectively prevents any other individual or entity from launching a competing bid for Frozen Food in a situation where the directors have decided to sell the Company and its shareholders no longer need the protection of a poison pill.   Thus, the poison pill amendment lacks a proper corporate purpose and is an unnecessary and unreasonable deal protection device that serves to insulate the Proposed Transaction from the possibility of a superior proposal.

82.     Ultimately, these deal protection devices restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.   The circumstances under which the Board may respond to an unsolicited alternative acquisition proposal that constitutes, or would reasonably be expected to constitute, a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.   Likewise, these provisions will foreclose the new bidder from providing the needed market check of Duff Brother's inadequate offer.

### F.      Frozen Food's Conflicted Board Members Are Disloyal and Acting for Their Own Benefit

83.     Rather than negotiate a transaction that was in the best interests of Frozen Food and its shareholders, the conflicted Board disloyally acceded to Duff's demands to sell the Company quickly and for inadequate consideration.

84.     If the Proposed Transaction closes, all unvested stock options and restricted stock units held by the Company's officers and directors will automatically vest upon consummation of the Proposed Transaction.   The following table shows the lucrative payments to be received by the Company's officers and directors as a the Proposed Transaction:

| Executive Officer/Director | Number of Shares Owned | Value of Shares Owned |
|---|---|---|
| Jerry T. Armstrong | 50,703 | **$ 106,476.30** |
| W. Mike Baggett | 51,825 | **$ 108,832.50** |
| Brian R. Blackmarr | 79,491 | **$ 166,931.10** |
| Barrett D. Clark | 48,127 | **$ 101,066.70** |
| John T. Hickerson | 281,022 | **$ 590,146.20** |
| Kevin K. Kilpatrick | 42,975 | **$ 90,247.50** |
| T. Michael O'Connor | 53,866 | **$ 113,118.60** |
| Steven D. Stedman | 8,558 | **$ 17,971.80** |
| S. Russell Stubbs | 490,738 | **$ 1,030,549.80** |
| Stoney M. Stubbs, Jr. | 1,604,096 | **$ 3,368,601.60** |
| **All directors and executive officers as a group (10 persons)** | **2,711,401** | **$ 5,693,942.10** |

85.     Moreover, according to the Recommendation Statement, defendants Stubbs and Hickerson have agreed to accept post-employment positions with the merged company. Thus, while the Proposed Transaction is not in the best interest of Frozen Food or its shareholders, it will produce lucrative benefits for the Company's officers and directors.

G.     **The Inadequate Recommendation Statement**

86.     On July 22, 2013, the Company filed the Recommendation Statement with the SEC and disseminated it to the Company's public shareholders in an attempt to convince shareholders to tender their shares. The Recommendation Statement failed to provide the Company's shareholders with material information and/or provided them with materially misleading information, in contravention of the Board's duty of candor in violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act.

87.     Without such information, Frozen Food shareholders will be forced to decide whether to tender their shares in the tender offer or whether to seek appraisal without all information necessary to make a fully informed decision.

1.     **Materially Misleading Statements/Omissions Regarding Management's Financial Forecasts**

88.     The Recommendation Statement at page 34 discloses certain management financial projections for the Company. Defendants, however, failed to disclose several critical projections provided to Stephens and after relied upon in rendering its Fairness Opinion, including:

   a.   Frozen Food's Net Operation Loss projections;

   b.   The "best case operating ratio projections for the fiscal year" referred to on page 16 of the Recommendation Statement; and

   c.   The estimated value of the synergies in the Proposed Transaction.

89.     It is well-settled that management's financial projections are essential to the Company and are crucial to providing shareholders with management's inside view of the Company's value and future prospects. This data is necessary for making an informed decision about whether to tender shares in the tender offer and, thus, must be disclosed.

**2.     Materially Incomplete and Misleading Disclosures Concerning Stephen's Financial Analyses**

90.     The Recommendation Statement, at pages 27-34, discloses certain information regarding Stephens' financial analyses used to support its Fairness Opinion. These disclosures concerning Stephens' financial analyses were materially incomplete and misleading in a number of respects.   Specifically, Defendants failed to disclose in the Recommendation Statement the following:

a. With respect to the *Comparable Companies Analysi*s, performed by Stephens, the Recommendation Statement must disclose: (i) the multiples for each of the comparable publicly traded companies selected by Stephens in its analysis; (ii) whether Stephens performed any benchmarking analysis for Frozen Food's, in relation to the comparable companies; (iii) whether any comparable companies were considered, but excluded from this analysis;

b. With respect to the *Comparable Transactions Analysis*, performed by Stephens, the Recommendation Statement must disclose: (i) the transaction values/NTM EBITDA multiples for each of the precedent transactions selected by Stephens in this analysis; and (ii) whether Stephens conducted any kind of benchmarking analysis for Frozen Food's, in relation to the selected transactions; and

c. With respect to the *Premiums Paid Analysis*, performed by Stephens, the Recommendation Statement must disclose: (i) a fair summary of the high, median and low premiums observed for the 444 precedent public merger and acquisition transactions observed; and (ii) the conclusions or numerical results (in dollars and cents) for the meaning of the premium or data ranges observed in the *Premium Paid Analysis*.

91.     These material facts that were used by Stephens in the financial analyses supporting its fairness opinion presented to the Board were critical to Frozen Food's shareholders ability to assess the credibility of Stephen's analyses upon which the Board relied in recommending the Proposed Transaction.

### 3. Materially Incomplete and Misleading Disclosures Concerning the Flawed Process and Conflicts

92. The Recommendation Statement filed by Defendants omit numerous important details regarding the process leading to the signing of the Merger Agreement, including:

a. The criteria used by the Board in selecting members of the Special Committee; whether certain Board members were considered for the Special Committee, but not selected; and the rationale for the Special Committee not retaining its own financial advisor;

b. Whether the Board requested Stephens to evaluate strategic alternatives, other than a sale of the Company in its January 17, 2012 presentation and, if so, what where they or, if not, why;

c. Regarding the 55 potential suitors for the Company, disclose whether the Duff Brothers were part of the initial 55 suitors contacted;

d. The implied offer price submitted by Strategic B on October 22, 2012 and the value attributed to "all transaction expenses incurred by the Company";

e. Disclose the date on which Strategic B initiated its interest in acquiring the Company;

f. Whether the Board was aware that the Duffs were acquiring Company stock on the open market between December 2012 and March 2013;

g. The rationale for Frozen Food's two largest shareholders refused to enter into voting agreements in support of the tender offer by the Duff Brothers;

h. With respect to the waiver of the standstill restrictions in the confidentiality agreements, why the Company only notified 16 of the 28 parties that they were waiving the standstill provisions and how the waiver was communicated to the potential acquirors;

i. The rationale for Strategic C withdrawing from the process and that date on which Strategic C formally withdrew from the process;

j. The terms of the post-closing employment arrangements that were discussed on July 9 to July 11, 2013, as well as the current status and terms of such discussions; and

k. Whether defendant Armstrong is continuing discussions with Duff Brothers regarding potential employment with the merged company and, if not, the reasons why.

93.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company and its shareholders will continue to suffer absent judicial intervention.

## DEMAND PURSUANT TO TEXAS BUSINESS

## ORGANIZATION CODE SECTION 21.553

94.     Pursuant to Texas Business Organization Code §21.553, "(a) A shareholder may not institute a derivative proceeding until the 91st day after the date a written demand is filed with the corporation stating with particularity the act, omission, or other matter that is the subject of the claim or challenge and requesting that the corporation take suitable action. (b) The waiting period required by Subsection (a) before a derivative proceeding may be instituted is not required if: (1) the shareholder has been previously notified that the demand has been rejected by the corporation; (2) the corporation is suffering irreparable injury; or (3) irreparable injury to the corporation would result by waiting for the expiration of the 90-day period."

95.     The tender offer is set to expire on August 16, 2013, just over a week from today.  If Plaintiff delayed filing an action for 90 days, then there would be insufficient time for Plaintiff to properly litigate the case, including conducting expedited discovery to support his motion to enjoin the Proposed Transaction until the Individual Defendants make the material, supplemental disclosures identified herein and remedy the other breaches of fiduciary duty alleged herein.  Thus, waiting 90 days before mounting a challenge to the Proposed Transaction will cause irreparable harm to Frozen Food shareholders.

## COUNT I

**On Behalf of Plaintiff and the Class for Breach of Fiduciary Duties
Against the Individual Defendants**

96.     Plaintiff repeats and realleges each and every allegation set forth herein.

97.     The Individual Defendants have violated their fiduciary duties owed to the public shareholders of Frozen Food and have acted to put their personal interests ahead of the interests of Frozen Food shareholders or acquiesced in those actions by fellow Defendants. These Individual Defendants have failed to take adequate measures to ensure that the interests of Frozen Food's shareholders are properly protected and have embarked on a process that avoids competitive bidding and provides Duff Brothers with an unfair advantage by effectively excluding other alternative proposals.

98.     By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, will unfairly deprive Plaintiff and other members of the Class of the true value of their Frozen Food investment.  Plaintiff and other members of the Class will suffer irreparable harm unless the actions of the Individual Defendants are enjoined and a fair process is substituted.

99.     The Individual Defendants have breached their duties of loyalty, good faith, candor, and care by not taking adequate measures to ensure that the interests of Frozen Food's public shareholders are properly protected from over-reaching by Duff Brothers.

100.     By reason of the foregoing acts, practices, and courses of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

101.     Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding the

28

Proposed Transaction.

102.    As a result of the actions of Defendants, Plaintiff and the Class have been, and will be, irreparably harmed in that they have not, and will not, receive their fair portion of the value of Frozen Food's stock and businesses, and will be prevented from obtaining a fair price for their common stock.

103.    Unless enjoined by this Court, the Individual Defendants will continue to breach the fiduciary duties owed to Plaintiff and the Class and may consummate the Proposed Transaction to the disadvantage of the public shareholders.

104.    The Individual Defendants have engaged in self-dealing, have not acted in good faith, and have breached, and are breaching, fiduciary duties owed to Plaintiff and the other members of the Class.

105.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which these actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against Frozen Food, Duff Brothers, and Merger Sub for Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duties**

106.    Plaintiff repeats and realleges each and every allegation set forth herein.

107.    The Individual Defendants breached their fiduciary duties to the Frozen Food shareholders by the actions alleged *supra*.

108.    Such breaches of fiduciary duties could not, and would not, have occurred but for the conduct of Frozen Food, Duff Brothers, and the Merger Sub (the "Entities"), which, therefore, aided and abetted the Individual Defendants' breaches.

109.    The Entities had knowledge that there were aiding and abetting the Individual

29

Defendants' breaches of fiduciary duties to Frozen Food shareholders.

110.     The Entities rendered substantial assistance to the Individual Defendants in their breaches of their fiduciary duties to Frozen Food shareholders.

111.     As a result of the Entities' conduct of aiding and abetting the Individual Defendants' breaches of fiduciary duties, Plaintiff and the other members of the Class have been, and will be, damaged in that they have been, and will be, prevented from obtaining a fair price for their shares.

112.     As a result of the unlawful actions of the Entities, Plaintiff and the other members of the Class will be irreparably harmed in that they will be prevented from obtaining the fair value of their equity ownership in the Company.  Unless enjoined by the Court, the Entities will continue to aid and abet the Individual Defendants' breaches of their fiduciary duties owed to Plaintiff and the members of the Class, and will aid and abet a process that inhibits the maximization of shareholder value and the disclosure of material information.

113.     Plaintiff and the other members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury which Defendants' actions threaten to inflict.

## COUNT III

**Derivatively on Behalf of Frozen Food for Breach of Fiduciary Duties Against the Individual Defendants**

114.     Other than those allegations which pertain to the class claims alleged herein, Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.  Plaintiff brings this claim derivatively on behalf of Frozen Food.

115.     The Individual Defendants have engaged in self-dealing, have not acted in good faith, and have breached, and are breaching, fiduciary duties owed to the Company.

116.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duty of loyalty owed to Frozen Food because, among other reasons:

(a)     they failed to take steps to maximize the value of Frozen Food;

(b)     they failed to properly value Frozen Food and its assets and operations;

(c)     they ignored or did not protect against the numerous conflicts of interest in connection with the Proposed Transaction, and have acted to put their personal interests ahead of the interests of Frozen Food shareholders or acquiesced in those actions by fellow Defendants.

117.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward the Company.

118.     As a result of the actions of Defendants, the Company has been, and will be, irreparably harmed in that it will be sold to Duff Brothers at an unfair price and through an unfair process.

119.     Unless enjoined by this Court, the Individual Defendants will continue to breach the fiduciary duties owed to the Company and may consummate the Proposed Transaction to the disadvantage of the Company.

120.     Frozen Food has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can the Company be fully protected from the immediate and irreparable injury which these actions threaten to inflict.

## **COUNT IV**

**Claim for Violations of Section 14(d)(4) and 14(e) of the Exchange Against Frozen Food and the Individual Defendants**

121.     Plaintiff repeats and realleges each allegation set forth herein.

122.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual only.

123.     Frozen Food and the Individual Defendants have caused the Recommendation Statement to be issued with the intention of soliciting shareholder support of the Proposed Transaction.

124.     Sections 14(d)(4) and 14(e) of the Exchange Act require full and complete disclosure in connection with tender offers.  Specifically, Section 14(e) provides that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

125.     The Recommendation Statement violates Sections 14(d)(4) and 14(e) because it omits material facts, including those set forth above.   Moreover, in the exercise of reasonable care, Frozen Food and the Individual Defendants should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

126.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT V

**On Behalf of Plaintiff for Violations of Section 20(a) of the Exchange Act
(Against the Individual Defendants)**

127.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

128.     Plaintiff brings this Exchange Act claim on behalf of himself as an individual only.

129.     The Individual Defendants acted as controlling persons of Frozen Food within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Frozen Food, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

130.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

131.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the

Proposed Transaction.  They were, thus, directly involved in the making of this document.

132.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

133.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

134.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(d)(4) and 14(e) by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

135.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and in favor of the Class, and against the Defendants as follows:

A.     Certifying this case as a class action, certifying Plaintiff as class representative, and their counsel as class counsel;

B.     Declaring that the conduct of the Individual Defendants in approving the Proposed Transaction and failing to negotiate in good faith with Duff Brothers and other acts and omissions set forth herein are breaches of the Individual Defendants' fiduciary duties;

C.     Preliminarily and permanently enjoining the Individual Defendants and all persons acting in concert with them from taking any steps to consummate the Proposed Transaction on the terms presently proposed;

D.     Preliminarily and permanently enjoining the Individual Defendants from initiating any defensive measures that would inhibit the Individual Defendants' ability to maximize value for Frozen Food shareholders;

E.     To the extent the Proposed Transaction is consummated prior to this Court's entry of a final judgment, rescinding it and setting it aside, or awarding rescissory damages;

F.     Directing Defendants to account to Plaintiff and the Class for all damages suffered by them as a result of Defendants' wrongful conduct alleged herein;

G.     Awarding Plaintiff the costs, expenses, and disbursements of this action, including attorneys' and experts' fees and, if applicable, pre-judgment, and post-judgment interest; and

H.     Awarding Plaintiff and the Class such other relief as this Court deems just, equitable, and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all claims so triable.

Dated:  August 7, 2013                     Respectfully submitted,

                                            /s/ Joe Kendall
                                           Joe Kendall, Texas Bar No. 11260700
                                           jkendall@kendalllawgroup.com
                                           Jamie J. McKey, Texas Bar No. 24045262
                                           jmckey@kendalllawgroup.com
                                           **KENDALL LAW GROUP, LLP**
                                           3232 McKinney Avenue, Suite 700
                                           Dallas, Texas 75204
                                           214-744-3000/214-744-3015 (Facsimile)

                                           **FARUQI & FARUQI, LLP**
                                           Juan E. Monteverde
                                           369 Lexington Avenue, 10th Floor
                                           New York, NY 10017
                                           Tel: (212) 983-9330
                                           Fax: (212) 983-9331

                                           *Attorneys for Plaintiff*